COURT OF APPEALS OF VIRGINIA


Present: Judges Alston, Chafin and Senior Judge Haley


JOSHUA EUGENE ANDREWS

                                                        MEMORANDUM OPINION*
v.      Record No. 1795-14-3                                PER CURIAM
                                                            MAY 5, 2015
ROANOKE COUNTY
  DEPARTMENT OF SOCIAL SERVICES


                    FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                               James R. Swanson, Judge

            (Joseph T. Cockfield, on brief), for appellant.

            (Peter S. Lubeck, Assistant County Attorney; Robin Dearing,
            Guardian *ad litem* for the minor child, on brief), for appellee.


        The trial court entered an order terminating the parental rights of Joshua Eugene Andrews

(father) to his son, J.A. The trial court found clear and convincing evidence proved the

circumstances required for termination pursuant to Code § 16.1-283(C)(1) and (2). On appeal,

father argues the trial court abused its discretion by denying his motion for a continuance so father

could have adequate time to provide names and contact information of relatives for the purpose of

relative placement. Father also argues the Roanoke County Department of Social Services (the

Department) "failed to meet the prima facie requirements of . . . Code § 16.1-283(C)(2), [and] the

evidence presented [did not] clearly and convincingly establish the [c]ourt's ruling and termination"

of his parental rights. Upon reviewing the record and briefs of the parties, we conclude that this

appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule

5A:27.

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

"'The decision whether to grant a continuance is a matter within the sound discretion of the trial court.'" Butler v. Culpeper Cnty. Dep't of Soc. Servs., 48 Va. App. 537, 543, 633 S.E.2d 196, 199 (2006) (quoting Venable v. Venable, 2 Va. App. 178, 181, 342 S.E.2d 646, 648 (1986)).  This decision will not be reversed on appeal unless the trial court abused its discretion and the moving party was prejudiced by the court's decision.  Id.

Considering the circumstances of this case, we find the trial court did not abuse its discretion in denying father's request for a continuance.  The Department first became involved with the family in April of 2011.  J.A. was removed from the home on April 17, 2013 when he was eight months old.  Father was arrested on April 26, 2013 for committing a criminal offense, and he was sentenced in November of 2013 to serve nine years of incarceration with four years suspended and five years to serve.

After conducting its own search for relatives of both father and the mother of J.A., the Department sent letters to forty-two persons identified as possible relatives for placement of J.A.  The Department received no responses from any of these persons.

Prior to father's incarceration, a Department worker and the guardian *ad litem* for J.A. went to father's residence and inquired if there were any relatives who may be able to care for J.A.  In addition, in September of 2013, two Department employees visited father in jail and discussed possible relative placement for J.A.  Furthermore, in February 2014, Cassandra Figgins, a foster care worker, spoke with father by telephone about "the possibility of relatives." She stated father asked if the relatives had to reside in Virginia in order to qualify, and she testified "it was made very clear that the relatives did not have to be in" Virginia.

Ben Jones, a Senior Direct Social Worker, testified father expressed "continual optimism" that he would locate a relative.  However, during the process described above, he provided two names to the Department—his mother and a brother.  The Department contacted

both of these relatives. Father's mother was excluded due to her criminal background, and the brother withdrew himself from consideration. Jones, like Figgins, also stated the Department never told father the relative had to reside in Virginia in order to qualify as a potential placement option.

At the parental rights termination hearing held in the Roanoke County Juvenile and Domestic Relations District Court (J&DR court) on May 14, 2014, father testified he had corresponded in writing with a sister who resided in Texas concerning possible placement of J.A. Thereafter, the Department contacted the sister, Deloris Sparkman, who replied by email that she was unable to take custody of the child. On September 2, 2014, the morning of the trial court hearing, the Department informed father that Sparkman would not be a relative placement.

At the trial court hearing, father testified he initially believed that, in order to be considered for relative placement, the relative needed to reside in Virginia. He asserted that this mistaken belief caused him to not give the Department Sparkman's name earlier. He also asserted that, had he known prior to the date of the trial court hearing that Sparkman was unable to be a relative placement, he would have provided the Department with additional names of relatives who were potential relative placement options.

On cross-examination, father admitted that he was responsible for the lack of communication that had resulted in his failure to provide additional relative placement names prior to the trial court hearing. He also asserted that he had been "under the impression" that any potential relatives for the placement of J.A. had to reside in Virginia. However, he acknowledged that employees of the Department had not told him this.

The record shows that, based on its own search for relatives, the Department sent letters to forty-two relatives of J.A.'s parents, looking for a suitable relative placement for the child. The Department first asked father for the names of relatives in April of 2013, the month J.A. was

placed into foster care. In addition, the Department asked father for names of relatives in September 2013 and in February 2014. Thus, father had more than one year, from April of 2013 to May 14, 2014, the date of the hearing in the J&DR court, to provide names of relatives prior to the initial termination of his parental rights. Indeed, father acknowledged that part of the problem with locating a suitable relative was his lack of communication. The issue arose again at the J&DR court hearing where father provided the name of the sister in Texas. After the J&DR court hearing, father appealed the termination of his parental rights to the trial court, and he had almost four more months prior to the trial court hearing to provide additional names of relatives to the Department. On this record, father failed to show he was prejudiced by the denial of the continuance. Accordingly, the trial court did not abuse its discretion in denying the request. See Butler, 48 Va. App. at 544, 633 S.E.2d at 199.

Father contends the evidence was insufficient to support the termination of his parental rights pursuant to Code § 16.1-283(C)(2), but he does not challenge the termination pursuant to Code § 16.1-283(C)(1). Father argues the trial court erred in finding clear and convincing evidence to terminate his parental rights pursuant to Code § 16.1-283(C)(2) because the Department offered him no services "during the life of this proceeding."

"[C]lear and convincing evidence that the termination [of parental rights] is in the child's best interests is a requirement in common to termination of parental rights under Code § 16.1-283(B) [or] (C) . . . ." Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 n.5, 614 S.E.2d 656, 659 n.5 (2005). While the best interests of the child is "the paramount consideration of a trial court" in a termination proceeding, Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991), terminations under Code § 16.1-283(B) and the subsections of Code § 16.1-283(C) provide distinct, "individual bases

upon which a petitioner may seek to terminate residual parental rights," <u>City of Newport News Dep't of Soc. Servs. v. Winslow</u>, 40 Va. App. 556, 563, 580 S.E.2d 463, 466 (2003).

In <u>Fields</u>, 46 Va. App. at 3, 614 S.E.2d at 657, a parent appealed to this Court from the trial court's decision to terminate her parental rights pursuant to Code § 16.1-283(C)(2) and Code § 16.1-283(E)(i). On appeal, she contended the evidence did not support the termination under Code § 16.1-283(C)(2), but she did not challenge the sufficiency of the evidence to sustain the termination pursuant to Code § 16.1-283(E)(i). This Court found that, in light of the unchallenged termination pursuant to Code § 16.1-283(E)(i), it was not required to consider the sufficiency of the evidence to support the termination under Code § 16.1-283(C)(2). <u>Fields</u>, 46 Va. App. at 8, 614 S.E.2d at 659.

Likewise, father contends the evidence was insufficient to support the termination pursuant to Code § 16.1-283(C)(2), but he does not challenge the termination pursuant to Code § 16.1-283(C)(1). Father's failure to challenge the termination under Code § 16.1-283(C)(1) renders moot his claim regarding the termination under Code § 16.1-283(C)(2), and we need not consider it.

Moreover, the evidence showed father was arrested for committing a crime within weeks of the eight-month-old child entering foster care. Father was later convicted and sentenced to incarceration. Figgins testified that the Family Assessment Planning Team determined that once father was incarcerated, it was not appropriate to fund services for him. She also stated that she understood father could have attended anger management and parenting classes while in jail, and she discussed these options with father. However, she did not receive confirmation that he attended these programs. In addition, Jones testified that, before J.A. was born, the Department had offered father substance abuse and domestic violence services related to the Department's involvement with another child of father's. Jones stated that, after J.A. was removed from the

home, father had not completed the services offered by the Department, and he still expressed "optimism that he was going to turn it around any minute," complete the programs, and identify a family member who could take care of J.A. However, J.A. has now been in foster care for over two years. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Accordingly, the trial court's decision is affirmed.

Affirmed.